[No. 19283-7-II.    Division Two.    December 19, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID STEPHENSON, *Appellant*.

---

[18]*Cross*, 99 Wn.2d at 383.

*Suzanne Lee Elliott*, for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for respondent.

SEINFELD, J. — David Stephenson appeals two convictions for second degree theft. Among other claims, he argues that he was denied the right to a unanimous jury because the elements instructions charged alternative offenses, but the court did not provide a unanimity instruction. We agree and, thus, reverse.

## FACTS

Stephenson began working as a mortgage broker in late 1990. He used the name Statewide Financial Services and, on his stationary, referred to his business as a corporation. He also referred to his "home office," thereby suggesting multiple branches. But he actually ran a one-person unincorporated business.

After reading about the business in a newspaper advertisement, William Chambers contacted Stephenson about refinancing a mortgage. At a March 1991 meeting, Stephenson told Chambers that there would be no problem obtaining a loan equal to 85 or 90 percent of the appraised value of the properties.

Chambers gave Stephenson two checks, one for $300 to pay for a property appraisal and one for $200 to pay for credit reports and other costs. The two men signed a retainer agreement in which Stephenson agreed to refund the $300 within 30 days from the expiration of the fee agreement if the loan application should be turned down for reasons other than inadequate appraisal value or title report problems. The parties agreed that the $200 retainer was nonrefundable and that Stephenson would use it to cover his expenses in setting up the loan application file.

Stephenson did not deposit the $300 appraisal fee into a trust account, notwithstanding the industry standard and Mortgage Broker Practices Act (the Act), RCW 19.146, requirement that he do so. Further, the $200 retainer was

contrary to the Act, which prohibits a broker from collecting any fee for his services unless a loan is obtained. RCW 19.146.070.

According to Chambers, he attempted to contact Stephenson 15 to 20 times regarding the status of the appraisal and his loan application. Stephenson returned only two of the messages, each time advising Chambers that he had ordered the appraisal but it was not yet completed. After time passed and Chambers did not receive either a loan or a refund of his money, he filed a complaint with the state Attorney General.

Also in March 1991, Walter Boelter responded to a Stephenson advertisement. Boelter wanted to refinance property and a mobile home he owned in Kitsap County but was aware that most lenders would not make a loan on a mobile home. After Stephenson assured Boelter that he could obtain a loan for at least 85 percent of the property's appraised value, Boelter provided Stephenson with two checks: $300 to pay for an appraisal and a nonrefundable $200 retainer fee to cover costs in establishing a file. Stephenson used the same retainer agreement for Boelter as he used for Chambers. Again, Stephenson did not place the moneys in a trust account.

Boelter's repeated efforts to check on the status of his loan were also unsuccessful. Stephenson provided excuses for the delay, but at one point he did send Boelter a letter indicating that he would refund the entire application and appraisal fee if he could not obtain financing by a certain date. Finally, Boelter received an appraisal for his property, but he never received a loan or a refund.

When Boelter made further attempts to talk to Stephenson, he was unable to locate him. By February 1991, Statewide had already moved from the address printed on its business card. A handwritten address on the back of the business card turned out to be a mail service box at 6824 19th Street that was vacated in November 1991 without a forwarding address. Boelter contacted the state business license office and the Department of Revenue without result. By August 1991, the toll-free number for Statewide

had been disconnected. Finally, Boelter, too, filed a complaint with the Attorney General. In addition, he filed a formal complaint with the Kitsap County Sheriff's Office in October 1991.

Meanwhile, Stephenson commingled the Chambers and Boelter moneys with his other funds, which he used to pay other business expenses. He did order the appraisals and the appraiser testified at trial that his company performed the appraisals, but was never paid.

On October 5, 1993, the State filed charges against Stephenson for two counts of second degree theft. The alleged victim of the first count was Walter Boelter or Trinity Appraisal and the alleged victim of the second count was William Chambers or Trinity Appraisal. The prosecuting attorney obtained the information supporting his charges from the Boelter and Chambers complaints and from the Attorney General's office.

Trial commenced on January 3, 1995. The court instructed the jury using the State's proposed elements instructions 8 and 9, which listed two victims in the alternative on each instruction. Stephenson's instructions did not identify a particular victim. Stephenson did not object to the court's use of the State's instruction.

The jury found Stephenson guilty on both counts. At a March 2 sentencing hearing, Stephenson objected to the State's sentencing recommendation that he pay $250 to the Kitsap County Anti-Profiteering Revolving Fund. He did not state any legal basis for his objection. At the continuation of the hearing on March 13, Stephenson did not reassert his objection and the court ordered the payment as part of Stephenson's sentence.

## JURY UNANIMITY

Stephenson alleges a violation of his constitutional right to a unanimous verdict. *See* art. I, § 21, of the Washington State Constitution; *State v. Ortega-Martinez,* 124 Wn.2d

702, 881 P.2d 231 (1994); *State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980). He argues that the elements instruction for each count alleged separate crimes against different victims and that, under these circumstances, the trial court erred by not giving a unanimity instruction.

The trial court violates a criminal defendant's constitutional right to a unanimous jury verdict by giving an elements instruction that describes separate crimes without giving a unanimity instruction. *State v. Lee*, 128 Wn.2d 151, 156-57, 904 P.2d 1143 (1995) (citing *Stephens*, 93 Wn.2d at 190-91). Although jury unanimity as to guilt is necessary, it is not necessary that the jury be unanimous as to which of alternative means the defendant used to commit the crime, if there is substantial evidence supporting each alternative. *Lee*, 128 Wn.2d at 157; *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984).

As Stephenson acknowledges, RCW 9A.56.020, read in conjunction with RCW 9A.56.010(7), proscribes four alternative means of committing theft.[1] *Lee*, 128 Wn.2d at 157; *State v. Southard*, 49 Wn. App. 59, 62, 741 P.2d 78 (1987). The jury instructions here set forth two of these: (1) wrongfully obtaining or exerting unauthorized control over money, property or services and (2) by color or aid of deception, obtaining control over money or property or services.[2] But the instructions, by naming two victims in the

---

[1]RCW 9A.56.020, when read in conjunction with RCW 9A.56.010(7), establishes the following four means of committing theft: (1) by taking; (2) by embezzlement; (3) by color or aid of deception, obtaining control; and (4) appropriating lost or misdelivered property or services. RCW 9A.56.010(7) (means (1) and (2)); RCW 9A.56.020(b) and (c) (means (3) and (4)); *State v. Vargas*, 37 Wn. App. 780, 782, 683 P.2d 234 (1984).

[2]The jury was instructed that "wrongfully obtains or exerts unauthorized control" means:

(a) to take the property of another, or

(b) having any property in one's possession, custody, or control as a bailee, agent, trustee, attorney, employee, executor, administrator, guardian, or person authorized by agreement or competent authority to take or hold such possession, custody or control, to appropriate the property to his own use or to the use of any other person than the true owner, or to se-

disjunctive for each count, also charged alternative crimes: the theft of property and the theft of services.

For purposes of clarification, we refer to the alternative crimes and alternative means at issue as follows:

Crime A - Counts I and II: Theft of money

> Means 1: by wrongfully obtaining or exerting unauthorized control over it

> Means 2: by deception

Crime B - Counts I and II: Theft of the services of Trinity Appraisal

> Means 1: by deception

The relevant portion of the elements instruction for Count I provided as follows:

> (1) That during the period between March 1, 1991 and October 1, 1991, the defendant wrongfully obtained or exerted unauthorized control over, or, by color or aid of deception, obtained control over money or property or services of Walter Boelter or Trinity Appraisal;

Count II contained the name of William Chambers in place of Walter Boelter. In all other respects it was identical to the instruction for Count I.

By naming two types of victims—the clients who lost property only, and Trinity Appraisal, who lost either property or services—the instructions charged two crimes for each count. With regard to Crime A, theft of property, the two named victims were merely two potential claimants to the same property. But the reference to theft of services allowed the jury to read the elements instruction for each count as alleging two separate crimes: Crime A, taking the

---

> cret or withhold the property from the true owner or person entitled thereto.

and that "by color or aid of deception" means:

> that the deception operated to bring about the obtaining of the property. It is not necessary that deception be the sole means of obtaining the property.

client's money, and Crime B, wrongfully obtaining Trinity Appraisal's *services.*

Further, the instructions allowed the jury to conclude that Stephenson committed either of these acts without committing the other. Thus, some, but fewer than all, of the jurors could have found Stephenson guilty of Crime A, wrongfully taking his clients' money, and some, but fewer than all, could have found him guilty of Crime B, wrongfully obtaining Trinity Appraisal's services.

The State relies upon *Lee* to support its contention that the jury was considering only alternative means of committing theft, and not alternative crimes of theft. But *Lee* is distinguishable and, thus, does not control our analysis here.

In *Lee,* an information charged the defendant with committing only one act of theft, but alleged that he did the act against either of two alternative victims. 128 Wn.2d 157. The Supreme Court concluded that: "no unanimity instruction regarding the victim's identity was needed. Moreover, the court of appeals' treatment of this case as one 'involving alternative crimes' is incorrect. Lee was accused of only *one act of theft*—obtaining and cashing the $700 check." *Lee,* 128 Wn.2d at 160 (emphasis added). Thus, the jury did not need to decide whether Lee committed the crime against victim A or against victim B. 128 Wn.2d at 158-59.[3]

Unlike *Lee,* the instructions here identified separate criminal acts; thus, the *Stephens'* rationale remains applicable: "The instruction in effect split the action into two separate crimes," (the taking of the $300.00 from whomever

---

[3] In *Lee,* the jury instructions did not identify a victim but because in theft cases, the name of the person from whom the property was "stolen" is not an element of the crime, and because Lee had adequate information regarding the identify of the victims to prepare his defense, the omission was not error. *Lee,* 128 Wn.2d at 158-60. In contrast, when the victim's identity is an element of the crime, for example, rape, assault, or murder, the court violates the constitutional unanimity requirement if it gives an instruction that allows some, but not all, of the jury to conclude that the criminal act was committed against one victim, and some, but not all, of the jury to conclude that the criminal act as committed against a different victim. *Stephens,* 93 Wn.2d at 189-91; *compare* WPIC 70.06 *with, e.g.,* WPIC 26.04, 35.02, 40.02.

was the owner of the money and the taking of services from Trinity Appraisal). *Stephens*, 93 Wn.2d at 190. By instructing on two alternative crimes without providing a unanimity instruction, the trial court violated Stephenson's right to a unanimous verdict.

Further, this error was not harmless. We presume prejudicial error in an alternative crimes case when the trial court fails to give a unanimity instruction and fails to identify a specific criminal act as the basis for conviction. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). We must reverse unless no rational trier of fact could have a reasonable doubt as to whether each incident established the crime beyond a reasonable doubt. *Kitchen*, 110 Wn.2d at 411.

There was substantial evidence supporting each alternative means in Crime A. The identification of Trinity Appraisal in this count merely identified it as a possible owner of the $300.00. Thus, an expression of jury unanimity was not necessary. *Lee*, 128 Wn.2d at 157.

But the record shows a paucity of evidence supporting Crime B. Although Stephenson used deception in his business practices generally, there is little, if any, evidence that he used deception to obtain the appraiser's services. Nor does the State in its brief point to any such evidence. The appraiser testified that when Stephenson contacted him, there was no understanding as to when he would be paid. And on cross-examination, the appraiser admitted that he dealt with companies with which he was unfamiliar in the same way that he dealt with well-known established companies. Based on this record, a rational trier of fact could have a reasonable doubt that Stephenson committed Crime B, as to either count.

When the court reverses a conviction because of instructional error, the trial court may retry the defendant, without subjecting him to double jeopardy, on any theory that the evidence supports. *See State v. Joy*, 121 Wn.2d 333, 345-46, 851 P.2d 654 (1993); *State v. Sargent*, 49 Wn. App. 64, 76-77, 741 P.2d 1017 (1987); *State v. Fleming*, 41

Wn. App. 33, 36, 701 P.2d 815 (1985); *State v. Dault*, 25 Wn. App. 568, 574, 608 P.2d 270 (1980). Because substantial evidence supports Means 1 and 2 with respect to Crime A, the State may retry Stephenson for that crime. Because it failed, however, to produce substantial evidence to support Crime B, double jeopardy principles bar retrial of that crime.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and HUNT, J., concur.