[No. 71676-5. En Banc.]
Argued May 9, 2002. Decided October 24, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. TIMOTHY LINEHAN, *Petitioner*.

*Francisco R. Rodriguez, Jr.* (of *Horwitz & Rodriguez*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Keith P. Scully* and *James M. Whisman, Deputies,* for respondent.

IRELAND, J. — Petitioner Timothy Linehan seeks review of the Court of Appeals decision affirming his jury conviction on one count of first degree theft. We hold that any error in defining one alternative means of committing first degree theft was harmless, as there was sufficient evidence for the jury to convict using other definitions for the alternative means set forth in RCW 9A.56.020 under which Linehan was charged.

## FACTS

In March 1998, Timothy Linehan and his business partner received $130,061.51 after completing a real estate transaction. Because the check was made out to Linehan personally, instead of to the partnership, on March 30, 1998 Linehan deposited the check in his personal account at Washington Mutual. He then wrote a check in the same amount from his Washington Mutual account and had his partner deposit it in the partnership account at Seafirst Bank on April 2, 1998. However, only $13,061.95 was deducted from Linehan's personal account at Washington Mutual due to an encoding error when processing the check. Seafirst corrected this error on April 7, 1998 by withdrawing the $116,999 balance from Linehan's Washington Mutual account. Washington Mutual did not detect

the error at that time. Hence, the improper $116,999 balance was left showing on Linehan's account.

The error prompted Linehan to ask his attorney what his options were concerning the extra sum. Linehan was advised that he could not keep the money and that the bank could demand the entire amount plus up to 12 percent interest. At no time did Linehan bring the error to the attention of Washington Mutual. Rather, on April 15, 1998, Linehan withdrew $105,000 from his Washington Mutual account and deposited the sum, in the form of a cashier's check, in his personal savings account at Continental Savings Bank on April 16, 1998. Between mid-April and July 1998, Linehan made 22 withdrawals from his Continental account.

Washington Mutual learned of the encoding error in June 1998 and fraud investigators contacted Linehan in July asking that the money be returned. The investigators explained that Washington Mutual would accept a promissory note for the outstanding sum if Linehan would secure it with collateral, which Linehan refused to do. After two unsuccessful attempts to recoup the money from Linehan, Washington Mutual contacted the police.

Linehan was charged by amended information with one count of first degree theft on September 13, 1999. The information charged that Linehan intentionally deprived Washington Mutual of property valued in excess of $1,500, and that he wrongfully obtained the money, exerted unauthorized control over the money, and that he obtained the money by color and aid of deception. The jury returned a guilty verdict on September 16, 1999.

Linehan appealed, contending in part that the trial court's instructions were erroneous because there was insufficient evidence to support a conviction under two of the three alternative means instructed upon and that it was impossible to determine on which means the jury based the verdict. Linehan also contended that the trial court gave an incorrect definition of "exerts unauthorized control," one of the alternative means charged. In its unpublished opinion,

the Court of Appeals did not address Linehan's definitional concern, but affirmed the conviction, holding there was substantial evidence to support the verdict under each of the alternative means charged. *State v. Linehan*, noted at 107 Wn. App. 1016, 2001 WL 828640, at *4.

## ANALYSIS

Standard of Review

▮ Whether a jury instruction correctly states the applicable law is a question of law that we review de novo. *See State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). Before addressing whether an instruction fairly allowed the parties to argue the case, the court must first determine whether the instruction accurately stated the law without misleading the jury. *State v. Acosta*, 101 Wn.2d 612, 619-20, 683 P.2d 1069 (1984). Jury instructions must be relevant to the evidence presented. *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986). Instructing a jury so as to relieve the State of its burden to prove all of the elements of the case is reversible error. *State v. Scott*, 110 Wn.2d 682, 690, 757 P.2d 492 (1988). A constitutional error is harmless only if we are convinced beyond a reasonable doubt that any reasonable jury would reach the same result absent the error. *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996).

Issues

Whether, in an alternative means case, an instructional error that omits a required portion of a definition and is unsupported by the evidence can be harmless.

Whether the alternative means "exerts unauthorized control" is defined by former RCW 9A.56.010(7)(b) and (c), exclusively, thereby applying only to embezzlement cases.

Applicable Law

The theft statute reads in relevant part:

**9A.56.030 Theft in the first degree—Other than a fire-**

**arm.** (1) A person is guilty of theft in the first degree if he or she commits theft of:

(a) Property or services which exceed(s) one thousand five hundred dollars in value other than a firearm as defined in RCW 9.41.010; or

(b) Property of any value other than a firearm as defined in RCW 9.41.010 taken from the person of another.

. . . .

**9A.56.020 Theft—Definition, defense.** (1) "Theft" means:

(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; . . .

. . . .

The terms "wrongfully obtain" and "exert unauthorized control" in RCW 9A.56.020(1)(a) are sometimes referred to together as theft by taking and subsection (1)(b) is sometimes referred to as theft by deception. *See State v. Smith*, 115 Wn.2d 434, 798 P.2d 1146 (1990).

The phrases "wrongfully obtain" and "exerts unauthorized control" are defined together in former RCW 9A-.56.010(7), which reads:

(7) "Wrongfully obtains" or "exerts unauthorized control" means:

(a) To take the property or services of another;

(b) Having any property or services in one's possession, custody or control as bailee, factor, lessee, pledgee, renter, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto; or

(c) Having any property or services in one's possession, custody, or control as partner, to secrete, withhold, or appropriate the same to his or her use or to the use of any person other than the true owner or person entitled thereto, where the use is unauthorized by the partnership agreement[.]

Former RCW 9A.56.010(7)(a)-(c).[1] Subsection (b) is commonly referred to as theft by embezzlement. *See State v. Ager*, 128 Wn.2d 85, 91, 904 P.2d 715 (1995) (citing *State v. Vargas*, 37 Wn. App. 780, 781-82, 683 P.2d 234 (1984)).

I. Alternative Means Analysis

*A. Jury Unanimity*

Linehan contends that, besides the alternative means provided in RCW 9A.56.020, the statute defining "wrongfully obtain or exert unauthorized control" describes at least one additional alternative means—theft by embezzlement. *See* former RCW 9A.56.010(7)(b). As such, Linehan asserts it was error for the trial court to fail to instruct the jury that it must be unanimous as to which means he used to commit theft since there was not substantial evidence supporting the theft by embezzlement "alternative."

In alternative means cases, jury unanimity as to the means used to commit the crime is not required if there is substantial evidence to support each of the alternative means charged. *State v. Arndt*, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976). Linehan was charged with first degree theft under the language of RCW 9A.56.020(1)(a) and (b) and RCW 9A.56.030(1)(a) and (b):

TIMOTHY LINEHAN ... with intent to deprive another of property ... having a value in excess of $1,500 ... did obtain control over such property belonging to Washington Mutual Bank, by *color and aid of deception*, and, did *exert unauthorized control* over such property; and *wrongfully obtain* such property;

Contrary to RCW 9A.56.030(1)(a) and (b), and 9A.56-.020(1)(a) and (b) ....

---

[1] Former RCW 9A.56.010(7) (1998) is now recodified at RCW 9A.56.010(19).

Clerk's Papers at 37 (emphasis added). "Wrongfully obtain" and "exert unauthorized control" are defined together in subsection (7) of the general definitions section of the Theft and Robbery chapter of the revised code. Former RCW 9A.56.010(7). The commonly used phrase "theft by embezzlement" refers to the definition provided in subsection (b) of former RCW 9A.56.010(7).

### B. Definition Statutes and Unanimity

■■ Definition statutes do not create additional alternative means of committing an offense. *State v. Laico*, 97 Wn. App. 759, 763 n.4, 987 P.2d 638 (1999) (citing *State v. Strohm*, 75 Wn. App. 301, 309, 879 P.2d 962 (1994), *review denied*, 126 Wn.2d 1002, 891 P.2d 37 (1995)). *See also State v. Marko*, 107 Wn. App. 215, 220, 27 P.3d 228 (2001) (the definitions of "threat" do not create alternative elements to the crime of intimidating a witness); *State v. Garvin*, 28 Wn. App. 82, 85, 621 P.2d 215 (1980) (the definitions of "threat," for purposes of the extortion statute, do not create alternative elements to the crime but merely define an element of the crime), *review denied*, 95 Wn.2d 1017 (1981). *But see State v. Stephenson*, 89 Wn. App. 217, 222 n.1, 948 P.2d 1321 (1997) (describing RCW 9A.56.020 and former RCW 9A.56.010(7) as proscribing four alternative means of theft: (1) by taking; (2) by embezzlement; (3) by color or aid of deception; and (4) appropriating lost or misdelivered property or services). There is no requirement that the jurors agree on the facts supporting the alternative means. *Strohm*, 75 Wn. App. at 309.

In *State v. Laico*, the defendant argued that the three definitions of "great bodily harm" create three alternative means for committing the offense. Division One of the Court of Appeals disagreed and held that "[t]he definition of 'great bodily harm' contained in RCW 9A.04.110(4)(c) is merely definitional and does not create alternative means of committing the crime of assault in the first degree." 97 Wn. App. at 760. The court therefore concluded that jury unanimity with respect to the existence of great bodily harm did not require unanimity as to the type of great bodily harm. *Id*. In

the broader context of aggravating circumstances to a first degree murder charge, this court has held that the jury need not be unanimous as to alternative ways to satisfy each of the alternative aggravating circumstances. *In re Pers. Restraint of Jeffries*, 110 Wn.2d 326, 339, 752 P.2d 1338 (1988). In that case, this court noted that the defendant's " 'means within means' argument raises the spectre of a myriad of instructions and verdict forms whenever a criminal statute contains several instances of use of the word 'or.' " *Id.*

■■ The theft statutes are structured differently than other crimes. With assault, for instance, the alternative means of the crime are provided in the statutes delineating the degrees of assault. *See* RCW 9A.36.011-.031. The statutes for arson, kidnapping, and rape are similarly structured. *See* RCW 9A.48.020, 9A.40.020, 9A.44.040. Moreover, these statutes define the crimes within the statutes delineating the degrees. Rape in the first degree, for example, provides that "[a] person is guilty of rape . . . *when such person engages in sexual intercourse with another person by forcible compulsion* where the perpetrator [uses one or more of the listed alternative means]." RCW 9A.44.040 (emphasis added). Thus, it is unnecessary to reference a second statute for the definition of rape. Theft is different. The statutes describing the degrees of theft do not provide alternative means of committing the crime, nor do they define the crime. Rather, the crime of theft is defined in terms of the alternative means of commission, in a statute separate from those defining the degrees of theft. *Compare* RCW 9A.56.020 *with* 9A.56.030-.050.

Linehan is correct that theft is an alternative means crime. *See State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993). However, he is incorrect insofar as he claims that theft by embezzlement, contained in former RCW 9A-.56.010(7)(b), is one of those alternative means. Linehan appears to interpret the theft statute as strictly equating "exerts unauthorized control" with theft by embezzlement. However, Linehan has misconstrued the theft statute by

interpreting the general definition statute for the Theft and Robbery chapter of the code, RCW 9A.56.010, as creating additional alternative means of committing theft. Former RCW 9A.56.010(7) defines mere *terms*, while RCW 9A.56.020(1)(a) defines the *crime* of theft in terms of alternative means, here, "wrongfully obtain" and "exert unauthorized control." RCW 9A.56.020 is therefore different in kind from those definition statutes that merely elaborate upon various terms or words. Thus, what is referred to as theft by embezzlement in former RCW 9A.56.010(7)(b) is not an additional means of committing theft. Rather, it is one way to define the alternative means of theft by "wrongfully obtain[ing] or exert[ing] unauthorized control" in RCW 9A.56.020(1)(a).

The Court of Appeals has been inconsistent in its analysis of theft by embezzlement and its discussions of the alternative means of theft. In *State v. Stephenson*, Division Two wrote that RCW 9A.56.020, combined with former 9A.56.010(7), proscribes "four alternative means of committing theft." 89 Wn. App. at 222. In a footnote, the court described those four alternatives as theft by (1) taking, (2) embezzlement, (3) color or aid of deception, and (4) appropriation of lost or misdelivered property of services. *Stephenson*, 89 Wn. App. at 222 n.1. The footnote continued to specify that "means" (1) and (2) were found in former RCW 9A.56.010(7), while "means" (3) and (4) were found in 9A.56.020(1)(b) and (c). *Id.* (citing *State v. Vargas*, 37 Wn. App. 780, 782, 683 P.2d 234 (1984)). In the text of the opinion, immediately following the footnote, the court wrote, "[t]he jury instructions here set forth two of these: (1) wrongfully obtaining or exerting unauthorized control over money, property or services and (2) by color or aid of deception, obtaining control over money or property or services." *Id.* at 222. This commingling of terms, both statutory and common, is problematic because common terms, such as "theft by embezzlement" and "theft by taking," are not the language of the theft statutes. Both Linehan's and the *Stephenson* court's interpretation is

contrary to the rule that definition statutes do not create additional alternative means. This interpretation has led not only to confusion as to what the alternative means of theft actually are, but has also given rise to confusion on the issue of jury unanimity in theft cases.

*State v. Vargas*, a Division One Court of Appeals case, is often cited for its statement that the theft statutes, when taken together, set out four distinct types of theft: theft by taking, embezzlement, theft by deception, and appropriation of lost or misdelivered property. 37 Wn. App. at 782, *cited in State v. Ager*, 128 Wn.2d 85, 91, 904 P.2d 715 (1995). The *Vargas* opinion clarified that " 'wrongfully obtains' or 'exerts unauthorized control' . . . is *defined* to include both theft by taking and embezzlement." *Vargas*, 37 Wn. App. at 781 (emphasis added). Both *Stephenson* and Linehan[2] appear to have interpreted *Vargas* as stating that the four *types* of theft are synonymous with the *alternative means* of theft. To the extent *Vargas* can be read to endorse that view, we disagree.

We hold that the definitions provided in former RCW 9A.56.010 do not create additional alternative means of theft. Therefore, under an alternative means analysis of this case, the jury must be unanimous as to whether Linehan committed theft by wrongfully obtaining, exerting unauthorized control, or obtaining the money by color and aid of deception. Unanimity is not required if there is substantial evidence supporting each of these alternative means. Based on the foregoing analysis, it follows that jury unanimity as to "wrongfully obtains" and "exerts unauthorized control" does not require unanimity as to whether Linehan embezzled the money pursuant to former RCW 9A.56.010(7)(b) or took the property or services of another pursuant to subsection (7)(a). *See Laico*, 97 Wn. App. 759; former RCW 9A.56.010(7)(a), (b). The jury need not be

---

[2] Linehan cites *State v. Ager*, 128 Wn.2d 85, 904 P.2d 715 (1995) for the proposition that there are "four distinct types of theft." *Ager*, in turn, cited *Vargas*. *Ager*, however, made no further discussion of alternative means. The focus of that opinion was whether a defendant in an embezzlement case is entitled to a jury instruction on the good faith claim of title defense. *Ager*, 128 Wn.2d at 91.

unanimous as to any of the definitions nor must substantial evidence support each definition. There is no requirement that the jury unanimously agree that Linehan's conduct satisfies the definition in subsection (7)(b), commonly referred to as theft by embezzlement, or that there be substantial evidence of theft by embezzlement.

## II. Correctly Defining "Exerts Unauthorized Control"

Linehan claims that "exerts unauthorized control" may be defined only with the definition for theft by embezzlement as contained in former RCW 9A.56.010(7)(b). Linehan's reasoning is that "exerts unauthorized control" equals theft by embezzlement. According to Linehan's argument, evidence of theft by embezzlement is required whenever a defendant is convicted under the language of "exerts unauthorized control." Linehan relies on cases such as *Ager*, 128 Wn.2d 85; *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993); *State v. Coria*, 105 Wn. App. 51, 57-59, 17 P.3d 1278 (2001); and *State v. Gillespie*, 41 Wn. App. 640, 642, 705 P.2d 808 (1985).

Linehan takes an overbroad interpretation of the cases cited above. While each case used subsection (7)(b) to define "exerts unauthorized control," embezzlement was at issue in each case and subsection (7)(b) was the most appropriate definition of the three definitions in subsection (7) to apply to the facts. However, as the Court of Appeals correctly noted, none of the cases went so far as to say that "exerts unauthorized control" is defined exclusively by subsection (7)(b) in all factual circumstances. *See Ager*, 128 Wn.2d at 91-92 (using former RCW 9A.56.010(7)(b) to define "wrongfully obtains" and "exerts unauthorized control" in embezzlement case); *Joy*, 121 Wn.2d at 339 (identifying former RCW 9A.56.010(7)(b) as defining "exerts unauthorized control" in relevant part since theft was by embezzlement); *Gillespie*, 41 Wn. App. at 643 (explaining that "wrongfully obtains" and "exerts unauthorized control" are both defined in former RCW 9A.56.010(7)(a) and (b) in embezzlement case). Linehan therefore has cited no author-

ity that has held "exerts unauthorized control" can be defined only by subsection (7)(b).

What we find persuasive are the cases that have defined the alternative means of "wrongfully obtains" and "exerts unauthorized control" as a unit, using any of the definitions in former RCW 9A.56.010(7), in cases other than those involving embezzlement. *See State v. Komok*, 113 Wn.2d 810, 814, 783 P.2d 1061 (1989) (using former RCW 9A-.56.010(7)(a) to define "wrongfully obtain or exert unauthorized control"); *State v. Mermis*, 105 Wn. App. 738, 747 n.23, 20 P.3d 1044 (2001); *State v. Roose*, 90 Wn. App. 513, 518, 957 P.2d 232 (1998) (defendant guilty of theft by exertion of unauthorized control when he carried duffel bag filled with guns out of store); *State v. Miller*, 92 Wn. App. 693, 701 n.5, 964 P.2d 1196 (1998) (" ' "wrongfully obtains" or "exerts unauthorized control" means: (a) To take the property . . . of another . . . .' RCW 9A.56.010(7)(a)"). It is up to the trial court to determine which definitions are best supported by the facts of a particular case and to instruct the jury accordingly. *See State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

The statutory structure of former RCW 9A.56.010(7) also supports our interpretation. The use of "or" between both phrases and each subsection means that any one or all three definitions can define either phrase. Presumably, the legislature would have split the phrases into separate definitional subsections (as with "color or aid of deception" in RCW 9A.56.010(4)) had it intended to define them independently. Rather, the two phrases are referenced together throughout the theft statute. *See* former RCW 9A.56.010(7); RCW 9A.56.020(1)(a).

██ It is permissible to refer to "exerts unauthorized control" as theft by embezzlement where the defendant was charged with alternative means of theft by exerting unauthorized control, and there is evidence of embezzlement in the form of a violation of a special trust relationship as outlined in subsection (7)(b) or partnership funds are implicated as outlined in subsection (7)(c). A reading of the

cases cited by Linehan, *supra*, suggests this is precisely what courts have done in that situation. Equating the common usage term "embezzlement" with the legal definition of "exerts unauthorized control" in that limited situation, is permissible, but given the confusion it apparently creates we admonish courts to use caution in so doing.

III. Did the Jury Instructions Relieve the State of its Burden?

Linehan contends that his conviction must be reversed because the trial court omitted the relationship or agreement requirement in the definition of theft by embezzlement. *See* former RCW 9A.56.010(7)(b). The trial court purported to follow *Washington Pattern Jury Instruction: Criminal* 79.02, which reads, in relevant part:

[Wrongfully obtains means to take wrongfully the property or services of another.]

[To exert unauthorized control means, having any property or services in one's possession, custody or control, as a _____, to secrete, withhold or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto.]

. . . .

11A WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 79.02, at 110 (2d ed. 1994) (WPIC). The Note on Use states, "use bracketed material as applicable." *Id.*, note on use at 110. The blank in the second paragraph is to be filled in with "the nature of the custodian of the property" from the list set forth in former RCW 9A.56.010(7)(b). *Id.* However, the instructions used by the trial court read as follows:

Wrongfully obtains means to take wrongfully the property or services of another.

To exert unauthorized control means, having any property or services in one's possession, custody or control, and to secrete, withhold or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto.

Clerk's Papers at 78. The trial court failed to include a relationship as required by the statute.

 "Jury instructions, taken in their entirety, must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt." *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). Here, the trial court chose to use former RCW 9A.56.010(7)(b) to define "exerts unauthorized control." It is unclear why the trial court considered this definition at all based on the facts, since this was not an embezzlement case, as the prosecutor acknowledged at trial:

> [Prosecutor]: . . . In this particular case we're talking about basically a theft and not embezzlement, as indicated, because in the embezzlement portion of it, it indicates a lot of different duties required by the employee-employer or however this case is—
>
> The Court: I see, you took the last bracketed language.
>
> [Prosecutor]: And that's why that was not included.
>
> . . . .

4 Trial Proceedings at 26-27; *see also id.* at 28. The prosecutor presented no evidence of a special relationship or agreement between Linehan and Washington Mutual.

 Before the jury can be instructed on and allowed to consider the various ways of committing a crime, there must be sufficient evidence to support the instructions. *State v. Golladay*, 78 Wn.2d 121, 137, 470 P.2d 191 (1970). Since the trial court did use the embezzlement definition, it should have required the state to allege and prove the appropriate relationship or agreement between Linehan and Washington Mutual and instructed the jury accordingly. To do otherwise was to relieve the state of its burden to prove every element of the offense. Reversal is required unless the error was harmless.

IV. Harmless Error Analysis

It is constitutionally required that the jury be instructed on all essential elements of the crime charged. *Scott*, 110

Wn.2d at 690. Jury instructions that omit essential elements of the crime charged relieve the State of this burden, for they permit the jury to convict without proof of the omitted elements. Therefore, such instructions violate due process. *Id.* We find constitutional error harmless only if convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error. *Easter*, 130 Wn.2d at 242. Having established that there is no unanimity requirement for definitions, nor is there an exclusive definitional relationship between "exerts unauthorized control" and former RCW 9A.56.010(7)(b), we can now address the effect of the instructional error discussed above. At trial, Linehan testified that his lawyer had advised him that he could not keep the money. Linehan was also aware that the money did not rightfully belong in his Washington Mutual account. The jury was free to use any definition in subsection (7) to define the alternative means of wrongfully obtains and exerts unauthorized control. The omission of the statutory relationship language required for former RCW 9A.56.010(7)(b) is harmless here because there was ample evidence to support a finding that Linehan "[took] the property or services of another," thereby satisfying subsection (7)(a), one of the other definitions of "wrongfully obtains" and "exerts unauthorized control" provided in former RCW 9A.56.010(7). Thus, while it was error to give the instruction on subsection (7)(b), it is superfluous, and the error is harmless beyond a reasonable doubt.

## CONCLUSION

Former RCW 9A.56.010(7) defines the terms "wrongfully obtains" and "exerts unauthorized control" conjunctively and gives three ways in which one may "wrongfully obtain" or "exert unauthorized control" to commit the crime of theft as defined in RCW 9A.56.020(1)(a). What we commonly refer to as "embezzlement" is merely one of the three ways to "wrongfully obtain" or "exert unauthorized control." "Embezzlement" is not an alternative means of committing the crime. Although it is instructional error to omit the

statutory relationship language in subsection (7)(b), under the facts of this case, we hold that the error was harmless beyond a reasonable doubt as the definition in subsection (7)(b) was surplusage and irrelevant. The Court of Appeals is affirmed.

ALEXANDER, C.J., and SMITH, JOHNSON, SANDERS, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

MADSEN, J., concurs in the result.