FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 JUL 31 AM 11: 46

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF TUMWATER, | ) | No. 76746-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ALAN L. LICHTI, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: July 31, 2017 |
| | ) | |

Cox, J. — Alan Lichti obtained discretionary review of the superior court's RALJ decision. That decision affirmed the district court's judgment of conviction for theft. Lichti argues that the district court's erroneous theft instruction prejudiced him. The superior court concluded that the erroneous instruction was harmless. Because the erroneous instruction was harmless beyond a reasonable doubt, we affirm.

Lichti drove to Walmart in his 2008 white Ford Focus. He purchased an Acer laptop computer, with cash, for $432.63. Lichti testified at trial that he drove home afterwards and placed the unopened laptop box in his bedroom, along with the keys to his Ford Focus. He lived with a few roommates at the time and had no lock on his bedroom door. Thereafter, he drove in another vehicle to a friend's house.

Approximately two hours after Lichti's purchase, someone went to Walmart and presented the Acer laptop box and receipt to customer service. He

received a cash refund of $432.63. He left the Walmart parking lot in a vehicle identified as Lichti's Ford Focus.

Walmart employees later opened the laptop box and discovered that it contained an old, broken HP brand laptop, not the new Acer. An employee tracked Lichti's purchase of the Acer laptop, obtained surveillance videos and photos, and called the Tumwater Police.

A police officer who investigated the incident testified at trial to calling Lichti's cell phone and speaking with him about the incident. The officer testified that Lichti admitted to the theft.

The City of Tumwater charged Lichti with one count of third degree theft of Walmart property. A jury found Lichti guilty as charged. The Thurston County district court entered its judgment and sentence on the jury's verdict.

Lichti appealed to the superior court, arguing that an erroneous theft instruction prejudiced him. The RALJ court affirmed his conviction, concluding that the erroneous instruction was harmless beyond a reasonable doubt.

Division II granted discretionary review of the RALJ court's decision.

## JURY INSTRUCTION & HARMLESS ERROR

Lichti argues that the theft instruction was erroneous and prejudiced him. The State properly concedes that the instruction was erroneous. But it argues that the error was harmless beyond a reasonable doubt. We agree with the State.

An erroneous jury instruction that omits an element of the charged offense is subject to the constitutional harmless error analysis.[1] Prejudice is presumed, and the City bears the burden of proving that the error was harmless beyond a reasonable doubt.[2] A constitutional error is harmless only if this court is convinced "beyond a reasonable doubt that the jury would have reached the same result in absence of the error."[3]

"Circumstantial evidence and direct evidence can be equally reliable."[4] But "inferences based on circumstantial evidence must be reasonable and cannot be based on speculation."[5] Inferences are logical conclusions or deductions from an established fact.[6]

Theft is the crime at issue in this case. It is an alternative means crime.[7] Under RCW 9A.56.020(1)(a), theft means:

> To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services . . . .

[1] State v. Thomas, 150 Wn.2d 821, 844-45, 83 P.3d 970 (2004).

[2] See State v. Coristine, 177 Wn.2d 370, 380, 300 P.3d 400 (2013).

[3] State v. Fisher, 185 Wn.2d 836, 847, 374 P.3d 1185 (2016).

[4] State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200, review denied, 184 Wn.2d 1011 (2015).

[5] State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

[6] Tokarz v. Ford Motor Co., 8 Wn. App. 645, 654, 508 P.2d 1370 (1973).

[7] State v. Linehan, 147 Wn.2d 638, 647, 56 P.3d 542 (2002).

The phrases "wrongfully obtain" and "exerts unauthorized control" are defined together under RCW 9A.56.010(22), which reads, in relevant part:

"Wrongfully obtains" or "exerts unauthorized control" means:

(a) To take the property or services of another;
(b) Having any property or services in one's possession, custody or control as bailee, factor, lessee, pledgee, renter, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto; or
(c) Having any property or services in one's possession, custody, or control as partner, . . . where the use is unauthorized by the partnership agreement.

Subsection (b) of these definitions is commonly known as theft by embezzlement.[8] These three definitions do not create additional alternative means of theft.[9]

State v. Linehan[10] is instructive regarding these theft statutes. There, the State charged Timothy Linehan with one count of first degree theft of money from Washington Mutual.[11] Due to an encoding error, Linehan's Washington Mutual

---

[8] Linehan, 147 Wn.2d at 645.

[9] Id. at 649.

[10] 147 Wn.2d 638, 56 P.3d 542 (2002).

[11] Id. at 642.

account had extra funds, which he did not return.[12] A jury found him guilty as charged, and he appealed.[13]

On appeal, Linehan argued that the trial court improperly instructed the jury by omitting a required portion of the "unauthorized control" instruction.[14] Specifically, the trial court purported to follow Washington Pattern Jury Instruction 79.02, which provides, in relevant part:

> [Wrongfully obtains means to take wrongfully the property or services of another.]
>
> [To exert **unauthorized control** means, having any property or services in one's possession, custody or control, as a _____, to secrete, withhold or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto.][15]

According to the WPIC committee, the blank portion of this instruction "is to be filled in with 'the nature of the custodian of the property' from the list set forth in . . . RCW 9A.56.010(22)(b)," as listed above.[16] But the trial court in that case provided the following instruction:

---

[12] Id. at 641-42.

[13] Id. at 642.

[14] Id. at 652-53.

[15] Id. at 652 (emphasis added); see also 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 79.02, at 200 (4th ed. 2016) (WPIC).

[16] Id. at 652 (quoting 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 79.02, at 110 (2d ed. 1994) (WPIC)); RCW 9A.56.010(7) is now RCW 9A.56.010(22). For consistency, this prehearing will refer to RCW 9A.56.010(22) instead of RCW 9A.56.010(7).

> Wrongfully obtains means to take wrongfully the property or services of another.

> To exert unauthorized control means, having any property or services in one's possession, custody or control, *and* to secrete, withhold or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto.[17]

This instruction omits text that should have been inserted at the word *"and."*

The supreme court concluded that the trial court should have required the State "to allege and prove the appropriate relationship or agreement between Linehan and Washington Mutual and instructed the jury accordingly. To do otherwise . . . relieve[d] the [S]tate of its burden to prove every element of the offense."[18] Thus, the instruction was erroneous.

But the supreme court ultimately determined that the error was harmless beyond a reasonable doubt.[19] The court analyzed RCW 9A.56.010(22), determining that "any one or all three definitions [in the subsections] can define" the "wrongfully obtain" or "exerts unauthorized control" phrases.[20]

The court also explained that "[t]he omission of the statutory relationship language required for . . . 9A.56.010(22)(b) [wa]s harmless . . . because there was ample evidence to support a finding that Linehan '[took] the property or

---

[17] Id. (emphasis added).

[18] Id. at 653.

[19] Id. at 654.

[20] Id. at 651.

services of another,'" thereby satisfying subsection (22)(a).[21] As stated above, 9A.56.010(22)(a) provides one of the three definitions of "wrongfully obtains" or "exerts unauthorized control."[22] Thus, the court concluded: "while it was error to give the instruction on subsection (22)(b), it is superfluous, and the error is harmless beyond a reasonable doubt."[23] The court specifically held that any error was harmless "as there was sufficient evidence for the jury to convict [Linehan] using other definitions for the alternative means set forth in RCW 9A.56.020."[24]

The same principles control in this case. Specifically, under Linehan, we conclude that the erroneous instruction was harmless beyond a reasonable doubt.

Here, the trial court instructed the jury that "[t]heft means to wrongfully obtain or exert unauthorized control over the property of another, or the value thereof, with intent to deprive that person of such property."[25] The trial court instructed the jury that "[w]rongfully obtains means to take wrongfully the property or services of another."[26] As in Linehan, the trial court also gave the jury the

---

[21] Id. at 654 (some alteration in original).

[22] Id.

[23] Id.

[24] Id. at 641.

[25] Clerk's Papers at 69.

[26] Id. at 72.

embezzlement instruction without including the nature of the custodian of the property from the list set forth in RCW 9A.56.010(22)(b).[27]

But the trial court's omission of the required custodian language is harmless beyond a reasonable doubt, as it was in Linehan. Sufficient evidence supports the jury's finding that Lichti "wrongfully [took] the property or services of another," thereby satisfying RCW 9A.56.010(22)(a).[28]

Sufficient evidence justifies a jury's finding of guilt beyond a reasonable doubt.[29] "[E]vidence is sufficient if 'after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt.'"[30]

Here, it is undisputed that Lichti drove to Walmart in his Ford Focus. He purchased an Acer laptop, with cash, for $432.63. Lichti testified that he drove home afterwards and placed the unopened laptop box in his bedroom, along with the keys to his Ford Focus. He then drove in another vehicle to a friend's house, leaving the laptop and Ford Focus keys in his bedroom. He had a few roommates at the time and had no lock on his bedroom door.

Approximately two hours after Lichti's purchase, someone ("man in the yellow shirt") went to Walmart and presented the Acer laptop box and receipt to

---

[27] See id. at 71.

[28] Id. at 72.

[29] State v. Armstrong, 188 Wn.2d 333, 394 P.3d 373, 377 (2017).

[30] Id. (quoting State v. Ortega-Martinez, 124 Wn.2d 702, 708, 881 P.2d 231 (1994)).

customer service. He received a cash refund of $432.63. The serial number on the purchase receipt matched the serial number on the box. The man in the yellow shirt signed the return slip and left the Walmart parking lot in a vehicle identified as Lichti's Ford Focus.

Amanda Johnson, a Walmart asset protection employee, testified about her role in the incident. She stated that the customer service department alerted her to a suspicious return of an Acer laptop. Walmart employees opened the laptop box and discovered that it contained an old, broken HP brand laptop, not the new Acer laptop. Johnson tracked Lichti's purchase of the Acer laptop, obtained surveillance videos and photos of the purchase and return, and called the Tumwater Police. Johnson testified that Lichti was not the man in the yellow shirt.

Officer Bryant Finch responded to the call and spoke with Johnson. He went to Lichti's residence the next day. A woman answered the door and identified herself as Lichti's girlfriend. She identified Lichti in a photograph and provided Officer Finch with Lichti's cell phone number. Officer Finch called the number and left a voice message.

Later that day, the police dispatch center notified Officer Finch of a call from the same phone number. He returned the call and asked the answerer to identify himself. The person identified himself as "Alan Lichti." Officer Finch explained his reason for the call but did not mention that the laptops had been switched. The answerer told Officer Finch what happened, stating that he switched the laptops and had a friend return the older laptop for a refund. The

answerer also stated that he still had the Acer laptop and was willing to meet Officer Finch at the police station. Officer Finch told the answerer to bring the laptop. No one did so.

At trial, Lichti testified that after he returned from Walmart, he drove a truck to a friend's house. He explained that he used his truck for work and went to work after visiting with friends. He also stated that he returned home and discovered that the Acer laptop was missing. He did not report it stolen because he "believe[d] in karma" and also believed that one of his roommates had taken it and would return it. He identified the man in the yellow shirt as his roommate "William Lee," who had borrowed his car in the past.

Lichti also stated that he did not receive a voice message from Officer Finch, did not call the officer, and did not receive any money from Lee.

Overall, the jury was presented with conflicting evidence surrounding the theft. Officer Finch testified that Lichti allegedly returned his call and admitted to the theft, while Lichti testified that he did not do so. Although Lichti provided the jury with an alternative version of events, the jury did not believe him. We defer to the jury on questions regarding conflicting evidence, witness credibility, and the persuasiveness of evidence.[31]

The City presented sufficient circumstantial evidence that allowed the jury to reasonably infer that Lichti "wrongfully [took] the property or services of another," thereby satisfying RCW 9A.56.010(22)(a). Thus, we hold that the

---

[31] Rodriquez, 187 Wn. App. at 930.

erroneous instruction was harmless beyond a reasonable doubt "as there was sufficient evidence for the jury to convict [Lichti] using other definitions for the alternative means set forth in RCW 9A.56.020."[32]

Lichti argues that the jury could have acquitted him under the wrongfully obtained instruction and convicted him under the erroneous unauthorized control instruction. Thus, he argues that the erroneous unauthorized control instruction may have contributed to the jury's verdict. This argument is unpersuasive.

As we previously discussed, the City presented sufficient evidence to allow the jury to reasonably infer that Lichti "wrongfully [took] the property or services of another."

Lichti argues that the erroneous instruction was prejudicial under the uncontroverted evidence test. But that test does not apply here.

An erroneous jury instruction that omits an element of the charged offense is subject to the constitutional harmless error analysis.[33] This specific type of erroneous instruction "'is harmless if that element is supported by uncontroverted evidence.'"[34]

Here, the uncontroverted evidence test does not apply because Linehan controls. There, the supreme court did not apply the uncontroverted evidence test to determine whether the erroneous theft instruction was harmless beyond a

---

[32] Linehan, 147 Wn.2d at 641.

[33] Thomas, 150 Wn.2d at 844-45.

[34] Id. at 845 (quoting State v. Brown, 147 Wn.2d 330, 341, 58 P.3d 889 (2002)).

reasonable doubt. Rather, the supreme court determined that the erroneous instruction was harmless because sufficient evidence supported the jury's finding that Linehan wrongfully obtained Washington Mutual's property.

Linehan controls because the supreme court specifically analyzed the theft statutes at issue in this case. The cases that Lichti cites to support his argument do not do so.

Lastly, Lichti argues that Linehan is consistent with the uncontroverted evidence test, even though the opinion does not mention it. But the supreme court's references to "sufficient evidence" and "ample evidence" in its harmless error analysis demonstrates otherwise.[35]

We affirm the RALJ court's order affirming the judgment of conviction.

_Cox, J._

WE CONCUR:

_____          _____

---

[35] Linehan, 147 Wn.2d at 641, 654.