[No. 42289-8-I.   Division One.   November 1, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY
HARRIS LAICO, *Appellant*.

*James Elliot Lobsenz*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Deborah A. Dwyer, Deputy*, for respondent.

GROSSE, J. — The definition of "great bodily harm" contained in RCW 9A.04.110(4)(c) is merely definitional and does not create alternative means of committing the crime of assault in the first degree. Therefore, jury unanimity with respect to the existence of great bodily harm does not require unanimity as to the type of great bodily harm. We reverse and remand for a new trial, however, because the court failed to instruct the jury on the lesser included offense of assault in the fourth degree when there was evidence supporting an inference that Laico committed only the lesser crime.

## FACTS

Bahram Ahmadi was working as a cashier at a convenience store when, at some point, he engaged in a confrontation with Chad Conti. Conti punched Ahmadi, knocking him to the floor. Ahmadi struck his head on the counter as he fell. Conti then left the store.

Anthony Laico was outside the store sitting in Conti's

car when he saw the conflict between Conti and Ahmadi. Laico entered the store and kicked and stomped Ahmadi in the back and chest area. He testified that he went into the store to assist Conti.

Ahmadi was taken to Harborview Medical Center, where he stayed for approximately three days. He sustained severe injuries, including missing teeth, multiple fractures of the face and skull, and an intercranial hematoma. Dr. Eric Pinczower testified that the intercranial hematoma could have created a probability of death, but that in Ahmadi's case it did not create a probability of death.

During closing argument, Laico's attorney argued that the jurors did not have to reach a unanimous verdict. The court sustained the State's objection to the argument and instructed the jury to follow the instructions of the court. Defense counsel proceeded to tell the jury that it did not have to reach a verdict if it could not agree.

Defense counsel also argued that the State did not properly charge Laico with the degree of assault for which he was guilty. The attorney argued that Laico's admission at trial that he committed first degree theft, a charge not at issue on appeal, demonstrates his honesty with regard to his testimony concerning the assault. In rebuttal, the State argued, without objection, that the jury should not afford any weight, with respect to the assault, to Laico's admission of guilt to the theft.

The jury convicted Laico of first degree assault and first degree theft. Laico appeals his conviction for the assault.

## DISCUSSION

1. The definition of "great bodily harm" in RCW 9A.04.110(4)(c) does not create alternative means of committing the crime of assault in the first degree.

■■ The State charged Laico with assault in the first degree under RCW 9A.36.011(1)(c). To convict, the State had to prove that Ahmadi suffered great bodily harm:

(1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:

. . . .

   (c) Assaults another and inflicts great bodily harm.

Great bodily harm is defined under RCW 9A.04.110(4)(c) as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ[.]" Laico argues that the three alternative definitions of great bodily harm create three alternative means for committing the offense. We disagree.

Merely because a definition statute states methods of committing a crime in the disjunctive does not mean that the definition creates alternative means of committing the crime. In *State v. Strohm*,[1] Strohm argued that the definition of "traffics" contained in RCW 9A.82.010(10)[2] created alternative means of trafficking in stolen property under RCW 9A.82.050(2).[3] We rejected this argument, concluding "that definition statutes do not create additional alternative means, 'means within means', of committing an offense."[4] "The various ways a person can 'traffic' under

---

[1]*State v. Strohm*, 75 Wn. App. 301, 879 P.2d 962 (1994).

[2] "'Traffic' means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person." RCW 9A.82.010(19).

[3]*Strohm*, 75 Wn. App. at 308-09. "A person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly *traffics* in stolen property, is guilty of trafficking in stolen property in the first degree." RCW 9A.82.050(2) (emphasis added).

[4]*Strohm*, 75 Wn. App. at 309 (quoting *State v. Garvin*, 28 Wn. App. 82, 85, 621 P.2d 215 (1980), in which we held, that in defining threat with regard to the crime of extortion, " 'the legislature was not creating alternative elements to, but merely defining an element of, the crime.' " *Strohm*, 75 Wn. App. at 308.). Similarly, in *State v. Peerson*, 62 Wn. App. 755, 816 P.2d 43 (1991), we held that jurors need not unanimously agree on the facts supporting the existence of a common scheme or plan, an aggravating circumstance to the crime of murder in the first degree. *See also State v. Martinez*, 76 Wn. App. 1, 5-6, 884 P.2d 3 (1994) ("to obtain or attempt to obtain" property did not constitute alternative means of committing extortion).

RCW 9A.82.010(10) are merely factual circumstances which support the traffics alternative under RCW 9A.82.050(2)."[5]

Our holding in *Strohm* is in accord with the Washington Supreme Court's opinion in *In re Jefferies*.[6] In that case, the court held that a jury was not required to unanimously agree as to alternative ways of satisfying each alternative aggravating circumstance that could constitute aggravated murder in first degree.[7] The court stated that Jefferies' " 'means within means' argument raises the spectre of a myriad of instructions and verdict forms whenever a criminal statute contains several instances of use of the word 'or'. . . . Petitioner cites no authority for his position and we perceive no necessity for it."[8]

Laico attempts to distinguish these cases by arguing that the facts here are more similar to the facts in *State v. Joy*.[9] In *Joy*, the Washington Supreme Court reversed two of Joy's five convictions for theft on the basis that there was insufficient evidence to support convictions under the theft by embezzlement definition of RCW 9A.56.020(1)(a). We do not find *Joy* controlling here because the issue before us was not directly addressed by the court.

More importantly, we note that RCW 9A.56.020 is set apart, separate and distinct, from the chapter's general definitions contained in RCW 9A.56.010, and, in essence, actually defines the *crime* of "theft." The crime is merely segregated by degree in subsequent sections. In contrast, "great bodily harm," is contained in the definition section pertaining to the entire Title 9A RCW, and is merely descriptive of a term that constitutes, among other things, an element of the crime of first degree assault.

Telling of its mere descriptive nature is its use under RCW 9A.36.011(1)(a), which states in part that a person

---

[5]*Strohm*, 75 Wn. App. at 309.

[6]*In re Personal Restraint of Jefferies*, 110 Wn.2d 326, 752 P.2d 1338 (1988).

[7]*Id.* at 339-40.

[8]*Id.*

[9]*State v. Joy*, 121 Wn.2d 333, 851 P.2d 654 (1993).

commits assault in the first degree if he or she, with intent to inflict great bodily harm, assaults another by means likely to produce great bodily harm or death. Incorporating the definition of great bodily harm at issue here into the crime would render the definition redundant, i.e., a person commits assault in the first degree if he or she, with intent to inflict bodily injury which creates a probability of death, assaults another by means likely to produce bodily injury which creates a probability of death or death. The use of a means likely to create a probability of death is no different than the use of means likely to create death. Certainly this redundancy could not have been the Legislature's intent.

Accordingly, we hold that the definition of "great bodily harm" does not add elements to the first degree assault statute, but rather is intended to provide understanding.

2. The trial court improperly refused to instruct the jury on the lesser included offense of fourth degree assault.

■■ Laico proposed a jury instruction on the lesser included offense of assault in the fourth degree. The court rejected the proposed instruction, stating that the evidence did not suggest that Laico was guilty of only the lesser offense. Laico argues that the instruction was required because the jury could have concluded that he was not Conti's accomplice and that his actions alone did not result in great or substantial bodily harm. We agree.

The defendant has an absolute right to instruct the jury on a lesser included offense when the elements of the lesser offense are necessary elements of the offense charge, and the evidence supports an inference that the lesser crime was committed.[10] Evidence supports an inference that the lesser crime was committed "[i]f the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater . . . ."[11] Because a rational jury could conclude that Ahmadi's injuries were caused by Conti rather than by Laico, the only issue here is

[10]*State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

[11]*State v. Berlin*, 133 Wn.2d 541, 551, 947 P.2d 700 (1997).

whether a rational jury could conclude that Laico was not Conti's accomplice.

To be legally accountable as an accomplice, Laico must be an accomplice to a *crime*. Because a person acting in self-defense commits no crime, if Conti acted in self-defense, there was no crime committed to which Laico would be an accomplice. The jury was presented with some evidence that Conti acted in self-defense. The testimony and videotaped evidence presented at trial shows that Conti punched Ahmadi only after Ahmadi grabbed Conti's sleeve, and after Ahmadi came around the counter and approached Conti as Conti backed towards the door. We also note that the jury was unable to reach a verdict with respect to Conti's guilt.

Because the evidence supports an inference that Conti acted in self-defense, the evidence supports an inference that Laico was not an accomplice, but instead guilty of only the lesser included offense of fourth degree assault. Accordingly, we reverse and remand for a new trial.

ELLINGTON and APPELWICK, JJ., concur.