# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                          )
              Respondent, )
                          )
           v.                    )
                          )
WILLIAM NEAL FRANCE, )
                          )
              Appellant. )
                          )

No. 68652-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 17, 2013

APPELWICK, J. — France was convicted of five counts of felony harassment and one count of witness intimidation for sending threatening voice mails. The court imposed an exceptional sentence. France appeals, claiming that: (1) evidence was insufficient to sustain the convictions; (2) the charging document was defective; and (3) the court erred in failing to enter written findings and conclusions justifying an exceptional sentence. The charging document was not defective, and the court did not err in its procedure for justifying an exceptional sentence. We accept the State's concession of error and reverse as to witness intimidation. We affirm the felony harassment convictions.

## FACTS

This case involves William France's crimes against two victims: his former public defender, Anita Paulsen, and Lisa Daugaard, Paulsen's supervisor.

Paulsen was assigned to represent France in August 2009. The case was resolved in a plea agreement. Apparently upset with his representation, France began leaving voice mail messages for Paulsen in October 2010, threatening to sexually assault her upon his release.

Paulsen estimated that she received more than 12 calls from France through early 2011, threatening sexual assault and physical injury. Daugaard, sent a cease and desist letter to France. France continued to leave messages for Paulsen. He also left messages for Daugaard, threatening to sexually assault and physically harm Daugaard and her family members. Paulsen and Daugaard filed a police report, and France was charged with multiple counts of felony harassment. On November 10, 2011, the trial court convicted and sentenced France to 180 months and ordered that he was to have no contact with the victims.

Later that day, France left another voice mail for Daugaard. He stated:

"Hey bitch, you fucked up by coming into the courtroom today.

"You think for one fucking minute nothing's going to happen to you? You worthless mother fucking slut.

"Give a message to Rita, Anita Paulsen, same thing, eight years, you'd better find a new job, bitch, you better find a new fucking job."[1]

Paulsen also received additional voice mails. On November 11, France left a voice mail stating:

"Hello honey. Glad to hear your voice. What you did in the courtroom was outstanding. That was a marvelous fucking act. I never heard [inaudible] in my whole life. I called up [a] friend, I called up a few of my friends. I told them about [you]. They'll be paying you a visit. Have a nice fucking life, you worthless fucking bitch."[2]

---

[1] The record of this call was provided by way of Daugaard's verbatim transcription. France does not dispute its accuracy.

[2] No written transcript of these calls exists. Defense counsel states that he made a good faith attempt to transcribe the messages in his brief. The State does not dispute the accuracy of these transcriptions, and neither does this court.

2

On November 17, France left Paulsen another voice mail, stating:

"Hello Anita. That was spectacular you being in the courtroom. That was great. I like that, you was really concerned about my welfare. Just want to let you know there's a couple of, that a couple of my buddies are coming to see ya. They're gonna take you out for lunch. You know. Show you appreciation. Just to let [you] know. It's gonna be okay. I told them to take care of ya. [You know] treat you really good."

Paulsen testified that she interpreted France's words, "'[t]hey're gonna to take you out for lunch,'" as "meaning to take me out, period." She stated that she perceived these words as a threat, and she believed that France would recruit other people to hurt her.

On December 5, France left the following voice mail for Paulsen:

"Anita Paulsen, I don't have a phone number for you to call me back. The only way I can call you, the only way I can get a hold of you is if I call you. But I do want to say one thing. You were spectacular in that courtroom on the 10th of this last month. Goddamn you were good. But there's one thing I want to do though, I want to put a bullet up your fucking ass."

[Approximately 40 seconds of silence]

". . . But before I do that, I'm gonna lick your pussy. Stick my dick in your pussy, then I'm gonna stick a broom up your ass. How you gonna feel about that little girl?"

On December 14, France left the following voice mail for Daugaard:

"Lisa, this is your favorite fucking person in the whole world. I like how you, uh, expressed yourself in the courtroom on the 10th of last month. Yeah, I liked that. It's been a fucking month, little lady. It's been a month. But see in 10 years, I want you to understand something real fuckin quick, I'm still gonna get ya. What you said in the courtroom wasn't called for. You come to the courtroom, coming to court, wasn't called for. You understand? Now I'm gonna do, I'm gonna do 96 fuckin months because of you. All because of you. But when I get out, I'm gonna get you in the fuckin elevator. I'm gonna fuck you in your ass, bitch. I'm gonna pull your fuckin pants down right in the elevator and I'm gonna let it have it. I'll pin it up and in ya, you little slut bitch."

3

On December 14, 2011, the State brought new charges against France, stemming from these postsentencing voice mails. On December 27, France left a voice mail for Daugaard stating, "Don't come to court girl. Don't come to court." Daugaard testified that she interpreted this voice mail to mean, "don't cooperate with the new case, basically."

The State charged France with three counts of felony harassment of Paulsen, two counts of felony harassment of Daugaard, and one count of witness intimidation of Daugaard.

When it came time to instruct the jury, instruction 6 provided the following definition for felony harassment:

> A person commits the crime of harassment when he, without lawful authority, knowingly threatens maliciously to do any act which is intended to substantially harm another person with respect to his or her physical health or safety and when he or she by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

The "to convict" instructions for felony harassment required the following elements to be proved beyond a reasonable doubt:

> (1) That . . . the defendant knowingly threatened"
>     (a) maliciously to do any act which was intended to substantially harm [the victim] with respect to her physical health or safety; and
>     (2) That the words or conduct of the defendant placed [the victim] in reasonable fear that the threat would be carried out;
>     (3) That the defendant acted without lawful authority;
>     (4) That the defendant was previously convicted of the crimes of felony harassment against [the victim]; and
>     (5) That the threat was made or received in the State of Washington.

The to convict instruction for witness intimidation required the following elements to be proven beyond a reasonable doubt:

> (1) That . . . the defendant by use of a threat against a current or prospective witness attempted to induce that person to absent herself from an official proceeding and
> (2) That the acts occurred in the State of Washington.

And, instruction 9 provided the following definition of the term "threat":

> As used in these instructions, threat also means to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time.
> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat.

A jury found France guilty on all counts. The court imposed an exceptional sentence by running counts I-III consecutive to counts IV-VI, for a total of 120 months. The judgment and sentence, entered March 23, 2012, stated, "An exceptional sentence above the standard range is imposed . . . . Findings of fact and Conclusions of Law are attached in Appendix D." No Appendix D was attached. On December 13, 2012, the court issued findings of fact and conclusions of law for an exceptional sentence. France appeals.

## DISCUSSION

### I.   Sufficiency of the Evidence of Felony Harassment

France contends that insufficient evidence supports his convictions for felony harassment. His argument centers on the claim that the State failed to prove that, with each count of harassment, he made a "threat" as defined by instruction 9.

When we review a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. State v. Williams, 137 Wn. App. 736, 743, 154 P.3d 322 (2007). We consider both circumstantial and direct evidence as equally reliable and defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We review jury instructions de novo, within the context of the instructions taken as a whole. State v. Jackman, 156 Wn.2d 736, 743, 132 P.3d 136 (2006). Jury instructions must inform the jury that the State bears the burden of proof for every element of the crime beyond a reasonable doubt. State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

Under the law of case doctrine, jury instructions not objected to become the applicable law, even if the instructions contain an unnecessary element of the crime. State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Thus, if an unnecessary element is added in the to convict instruction in a criminal case, without objection, the State assumes the burden of proving the added element. Id. In the event of a sufficiency of the evidence challenge to a law of case conviction, the sufficiency is determined with reference to the instructions. Id. at 102-03; Tonkovich v. Dep't. of Labor & Indus., 31 Wn.2d 220, 225, 195 P.2d 638 (1948).

6

France assigns no error to the instructions. Instead, he relies exclusively on Hickman and Tonkovich to argue that, because definitional instruction 9 was admitted without objection, the law of the case required the State to prove that France made a threat in accordance with the full text of instruction 9. And, France contends, the State failed to prove that with each count of felony harassment, he threatened Paulsen or Daugaard with the immediate use of force against persons present at the time of making the voice mails. Under this reading, evidence would be insufficient, because France was in custody when he left the voice mails, and neither victim was present.

Neither Hickman nor Tonkovich compel that result. Hickman involved an unnecessary element added to the to convict instructions, and Tonkovich was a civil case involving neither to convict instructions nor criminal burdens of proof. Hickman, 135 Wn.2d at 105-06; Tonkovich, 31 Wn.2d at 222-23. France cites no Washington authority where the appellate courts have held that, in a criminal case, a definitional instruction, rather than a to convict instruction, creates an additional element of the crime. Several decisions by Washington courts refute the premise that a definition may create an element of the crime. For instance, in State v. Marko, the defendant argued that the statutory definition of "threat," provided to the jury, created an alternative means of committing the crime of witness intimidation. 107 Wn. App. 215, 218, 27 P.3d 228 (2001). The court held that the statutory definition was "strictly definitional" and did not create an additional element of the crime justifying unanimity instruction. Id. at 218-20. Similarly, in State v. Laico, the court held that the definition of "great bodily harm" did

not add elements to first degree assault, "but rather is intended to provide understanding." 97 Wn. App. 759, 764, 987 P.2d 638 (1999).

France was charged with two "threat" crimes: felony harassment and witness intimidation. Instruction 9 contained two definitions of threat. The first paragraph states, "As used in these instructions, threat also means to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time." (Emphasis added.) France dismisses the term "also" as used in instruction 9 as having no effect. France is incorrect. This language parrots precisely the model definitional instruction for threat as applied to witness intimidation. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 115.52, at 438 (3d ed. 2008) (WPIC). The notes for 11A WPIC 115.52 explain that the word "also" is to be used "[i]f this instruction is used with one or more of the definitions of threat contained in [11] WPIC 2.24[, at 7]." And, 11 WPIC 2.24 contains a definition for threat that was used in instruction 6 and the to convict instruction.[3]

Here, instruction 6 and the to convict instruction, modified the word "threaten," with the phrase, "maliciously to do any act which is intended to substantially harm another person with respect to his or her physical health or safety." This defined "threaten" for purposes of the felony harassment charges. But, that definition did not apply to the witness intimidation charge. The first paragraph of instruction 9 defined

---

[3] The second paragraph of instruction 9 defines "true threat." "True threat" is not an essential element of the crime to be incorporated in the to-convict instruction. State v. Allen, 176 Wn.2d 611, 632, 628, 294 P.3d 679 (2013). Rather, it safeguards the defendant's free speech rights when threat is an element in the to convict instructions. Id. at 632.

threat for witness intimidation, but it had no application to felony harassment. It did not add an element to be proven.

The State needed to prove, in relevant part, that France knowingly threatened to maliciously do an act intended to substantially harm the victim's physical health or safety. France told Daugaard, "You think for one fucking minute nothing's going to happen to you? . . . Anita Paulsen, same thing, eight years, you'd better find a new job." He said that in 10 years he's "gonna get" her, and that he's going to sexually assault her in the elevator. He told Paulsen that he would "put a bullet" in her, sexually assault her, and anally penetrate her with a broom. He told Paulsen that his friends were going to pay her a visit. He also stated, "[A] couple of my buddies are coming to see ya. They're going to take you out for lunch." Paulsen testified that she interpreted these words as a threat, "meaning to take me out, period." A rational trier of fact could determine that in leaving these voice mails, France intended to substantially harm Paulsen and Daugaard with respect to their physical health or safety. We conclude that evidence was sufficient to support France's felony harassment convictions.

## II. Witness Intimidation Conviction

France also contends that the evidence was insufficient to support his conviction for witness intimidation. Specifically, France argues that the voice mail he left with Daugaard stating, "Don't come to court, girl. Don't come to court," is insufficient to establish that he made a threat under RCW 9A.72.110(1)(c), as read with instruction 9.

Consistent with the to convict instruction, under RCW 9A.72.110(1)(c), a person is guilty of witness intimidation when he (1) uses a threat; (2) against a current or

9

prospective witness; (3) in attempt to induce that person to absent herself from legal proceedings for which she was summoned to testify. As we explained, instruction 9 defines "threat" as used in the witness intimidation statute.

France argues that the State presented insufficient evidence that he intended to immediately use force against any person who was present at the time that he left Daugaard the voice mail in which he stated, "'Don't come to court.'" We reiterate that the law of the case, as set forth in Hickman and Tonkovich, does not compel a definitional instruction to be accepted as an element in the to convict instructions where the appellant assigns no error to the to convict instructions. Nonetheless, the State concedes error on the grounds that the jurors had to refer to instruction 9 in order to define threat for the purposes of witness intimidation. We accept the State's concession. We reverse and dismiss the witness intimidation charge.

III. Charging Document

France next argues that the charging document was constitutionally defective, because it did not include all essential elements of the crimes charged. Namely, France contends that because a "true threat" is an essential element of witness intimidation and felony harassment, it must be included in the charging document. Precedent dictates otherwise.

We review challenges to the sufficiency of a charging document de novo. State v. Williams, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). To be constitutionally adequate, a charging document must include all essential elements of the crime, both statutory and nonstatutory. State v. Kjorsvik, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991). To

avoid unconstitutional infringements upon protected speech, we interpret statutes criminalizing threatening statements as proscribing only true threats. State v. Kilburn, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004). A "true threat" is a statement that, based on the context or circumstances, a reasonable person would foresee that the statement would be interpreted as a serious expression of intent to inflict bodily harm upon or kill another person. Id.

After the parties submitted their briefs for this case, the Washington Supreme Court decided State v. Allen, 176 Wn.2d 611, 294 P.3d 679 (2013). It concluded that the definition of a "true threat" is not an essential element of felony harassment that must be alleged in the charging document provided the definition is supplied to the jury a defendant's First Amendment rights are sufficiently safeguarded. Id. at 630. Here, Allen controls. France was charged with felony harassment and witness intimidation. True threat was not included in the charging document, but the jury was given an instruction defining true threat in the second paragraph of instruction 9. Failure to include the true threat requirement in the charging document does not amount to error.

IV. Findings of Fact and Conclusions of Law Justifying Exceptional Sentence

France argues that his case should be remanded for entry of findings of fact and conclusions of law regarding exceptional sentence, because this document was not attached to the judgment entered on March 23, 2012. Whenever a trial court imposes an exceptional sentence, the court must explain the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.535.

Tardy findings were entered on December 13, 2012. Findings and conclusions may be submitted and entered while an appeal is pending if there is no prejudice to the defendant and no indication that the findings and conclusions were tailored to meet the issues presented on appeal. State v. Quincy, 122 Wn. App. 395, 398, 95 P.3d 353 (2004).

The trial court's December 13 findings satisfy RCW 9.94A.535. France does not argue that he was prejudiced by delay, and we discern no actual prejudice from the record or the briefs. And, no evidence indicates that the findings were tailored in response to France's arguments on appeal. Rather, the findings essentially repeat the Judge's oral ruling at sentencing. The written findings did not deviate from, nor substantively add to, the terms articulated at oral ruling. No remand is necessary.

We affirm.

WE CONCUR:

12