# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,      )
                          )   DIVISION ONE
            Respondent,   )
                          )   No. 68836-7-I
        v.                )
                          )   UNPUBLISHED OPINION
ISIAH IKE DODD,           )
                          )
            Appellant.    )   FILED: September 16, 2013
_____)

DWYER, J. — As a general matter, definitions of elements do not themselves become elements of the crime nor create alternative means of committing the crime. But when definitions or other unnecessary elements are included without objection in the to-convict jury instruction, the State assumes the burden of proving those elements. Here, the State concedes that the to-convict instruction required it to prove that Isiah Dodd committed second degree trafficking in stolen property in one of two ways. Because there is insufficient evidence in the record to support Dodd's conviction under one of the alternative means set forth in the instruction, we cannot be certain that the conviction was the result of a proper unanimous verdict. Accordingly, we reverse and remand.

I

Jim Schindler and William Irmscher were life partners. When Irmscher died in December 2007, Schindler inherited his home and its contents. Schindler wanted to sell the house, but was overwhelmed by the prospect of preparing the house for sale and sorting through and distributing Irmscher's belongings.

Schindler met Isiah Dodd through a mutual acquaintance. In 2008, Schindler invited Dodd to live in the furnished house for reduced rent in exchange for Dodd's help with some projects and yard maintenance. The lease agreement prohibited Dodd from selling or removing any items from the house. The arrangement worked well initially, but after approximately two years, Schindler became dissatisfied with Dodd's inconsistent rent payments and his performance of the work he agreed to do.

In June of 2010, before leaving on a six-week teaching assignment in Europe, Schindler asked Dodd to vacate the house prior to his return. During Schindler's absence, Dodd held a yard sale and sold some of the contents of Schindler's house.

In late July, Schindler returned from Europe to find the house largely empty. The property missing from the house included the washer and dryer, a dining room table, a buffet, the entire contents of the garage, bookshelves, and garden statues. Schindler contacted Dodd and warned him that if he failed to return the property by a certain date, he would go to the police. Dodd responded, "You do what you have to do and I'll do what I have to do."

When police later executed a search warrant on Dodd's new residence, they discovered several items belonging to Schindler, including the washer and dryer, a lawn mower, outside ornamental objects, a set of silverware, and a valuable dictionary. Dodd admitted to the police that he sold some items from the house without Schindler's permission. In fact, he said that he had previously

2

suggested a garage sale to Schindler, but Schindler had rejected the idea. However, Dodd said he believed his plan was mutually advantageous because Schindler needed to dispose of the items and he needed money for the move. He also said he took some things to his new residence because Schindler had no use for them. Dodd also claimed that he took some ornamental outside objects merely for safekeeping while Schindler was away.

The State charged Dodd with one count of trafficking in stolen property in the first degree. The first trial resulted in a hung jury. Thereafter, the State amended the information to charge the lesser crime of trafficking in stolen property in the second degree. A second trial resulted in Dodd being convicted of the offense.

## II

Dodd contends that, according to the jury instructions given at trial, he could be convicted upon proof of two alternative means of committing the crime of second degree trafficking in stolen property and that there is insufficient evidence to support his conviction under one of these alternative means.

Alternative means crimes are generally created by a statute that identifies a single crime and provides more than one means of committing that crime. State v. Williams, 136 Wn. App. 486, 497, 150 P.3d 111 (2007). In order to properly convict the defendant when the legislature has defined a crime to include an element that may be established by alternative means, the jury must be unanimous that the defendant committed the crime in one or another of the

alternative ways provided by the legislature. Schad v. Arizona, 501 U.S. 624, 632, 645, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991); Williams, 136 Wn. App. at 497-98. The State is not required to elect a means nor does the jury need to be instructed that it must agree on the means so long as sufficient evidence supports each alternative means. State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012).

Trafficking in stolen property in the second degree is not an alternative means crime. The statute defining the crime, RCW 9A.82.055, provides simply that a person who "recklessly traffics in stolen property is guilty of trafficking in stolen property in the second degree." The statute supplies a definition of "traffic" in a separate provision:

> "Traffic" means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person.

RCW 9A.82.010(19).

Washington courts have consistently rejected arguments that definitional statutes supply additional alternative means for a given offense. See, e.g., State v. Marko, 107 Wn. App. 215, 219-20, 27 P.3d 228 (2001) (statutory definition of "threat" does not create additional elements of the crime of intimidating a witness and a jury unanimity instruction was not required); State v. Laico, 97 Wn. App. 759, 764, 987 P.2d 638 (1999) (statutory definition of "great bodily harm" does not add an element to the assault statute, rather it is intended to provide

4

understanding). In <u>State v. Strohm</u>, 75 Wn. App. 301, 308-09, 879 P.2d 962 (1994), this court specifically considered and rejected an attempt to expand the alternative means of committing first degree trafficking in stolen property based on the statutory definition of "traffic."

In this case, the trial court gave the State's proposed to-convict instruction to the jury. It incorporated the statutory definition of trafficking and required the jury to find that Dodd committed the crime either by selling or disposing of stolen property, or by possessing or obtaining control of stolen property with intent to sell it. <u>See</u> RCW 9A.82.010(19). The instruction provided, in relevant part, as follows:

> To convict the defendant of the crime of Trafficking in Stolen Property in the Second Degree as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That during a period of time between on or about May 1, 2010, and on or about July 28, 2010, the defendant knowingly
>     (a) possessed or retained control over property and
>         (i) the defendant knew of and disregarded a substantial risk that the property was stolen property; and
>         (ii) the defendant intended to sell or transfer or distribute or dispense that property to another person;
> or
>     (b) sold or transferred or distributed or dispensed or disposed of property to another person and the defendant knew of and disregarded a substantial risk that the property was stolen property;
> (2) That the defendant's disregard of that risk was a gross deviation from conduct that a reasonable person would exercise in the same situation;
> (3) That the property was stolen property; and
> (4) That the acts occurred in the State of Washington.

Jury Instruction 15.

The trial court did not instruct the jury that it had to reach a unanimous agreement as to the means by which Dodd trafficked stolen property and the State did not make an election as to means. Nor was there a special verdict to specify the means relied upon by the jury in reaching its verdict.

Under the law of the case doctrine, jury instructions not objected to become the applicable law, even if the instructions contain an unnecessary element of the crime. State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Thus, if an unnecessary element is added to the to-convict instruction, without objection, the State assumes the burden of proving the added element. Hickman, 135 Wn.2d at 102. Sufficiency of the evidence is determined with reference to the instructions. Hickman, 135 Wn.2d at 102-03; Tonkovich v. Dep't. of Labor & Indus., 31 Wn.2d 220, 225, 195 P.2d 638 (1948). The State concedes that the to-convict instruction provided alternative means and to affirm the conviction, sufficient evidence in the record must support each means.

The evidence that Dodd held a yard sale was clearly sufficient to support his conviction under the second means set forth in the to-convict instruction. The parties' dispute centers on the other means, specifically whether there was sufficient evidence that Dodd (1) possessed or retained control over the property, (2) knowing and disregarding a substantial risk that the property was stolen, (3) with intent to sell or transfer the property. To resolve this issue, we view the evidence in the light most favorable to the State, asking whether any rational trier

6

of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

The State suggests that since Dodd sold some items belonging to Schindler previously at the yard sale, the jury could have inferred that he also intended to sell the items he took and installed in his new home. But the evidence at trial does not support the inference urged by the State. Dodd specifically told the police that he took the items because he did not think Schindler needed them and he would be able to use them in his new residence. When the police went to Dodd's home, there was evidence to suggest the items were, in fact, being used. As the prosecutor argued to the jury in closing argument, the evidence indicated only that Dodd intended to keep the things he appropriated. The evidence that Dodd took items from Schindler's house to his new residence could not support his conviction under the first alternative means set forth in the instruction.

Alternatively, the State contends that the jury could have concluded that, prior to the yard sale, Dodd possessed household items belonging to Schindler with the intent to sell them. The problem with this argument is that Dodd had to possess those items while knowing and disregarding a substantial risk that the items were "stolen"—in other words, "obtained by theft." RCW 9A.82.010(16). Even assuming the evidence is sufficient for the jury to infer that Dodd had the intent to sell Schindler's property before the actual sales occurred, Dodd possessed Schindler's property at that point under his lawful tenancy. There is

7

no evidence in the record to suggest that, prior to the sale, Dodd wrongfully obtained or exerted unauthorized control of Schindler's property. See RCW 9A.56.020(1)(a). Therefore, the evidence that Dodd sold items at a yard sale is likewise insufficient to support his conviction under the first alternative means as provided in the to-convict instruction.

Because there is insufficient evidence in the record to support Dodd's conviction under each alternative means included in the to-convict instruction, we reverse the judgment and sentence and remand for proceedings consistent with this opinion.[1]

We concur:

---

[1] Because of our disposition we need not reach Dodd's additional claims of instructional error.

8