IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
| --- | --- | --- |
| | ) | No. 70261-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DANIEL BATEMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 11, 2014 |
| | ) | |

BECKER, J. — Daniel Bateman appeals from his convictions for two counts of identity theft in the second degree, violation of the uniform controlled substances act, and possession of stolen property in the second degree. On appeal, he makes two arguments: (1) the trial court erred when it admitted recordings of his phone calls from jail and (2) substantial evidence did not support each alternative means of committing identity theft. We affirm.

The charges of identity theft arose from the use of "cloned" or remagnetized credit cards on three occasions in August 2012. The name of Melissa Matera, Bateman's girl friend, was on the cards. The magnetic strip information belonged to a couple whose home had recently been burglarized.

On August 4, 2012, a stolen Capital One credit card was used at a convenience store in the Greenwood neighborhood of Seattle. A video showed Bateman and Matera in the store. Matera made a purchase, left the store, returned, and made another purchase.

Later that day, a stolen American Express card was used to make a purchase at a mall department store in north Seattle. A surveillance video showed Bateman purchasing two pairs of men's jeans.

On August 5, 2012, the same card was used to make a purchase at a Ballard drugstore. The store's security cameras showed Bateman and Matera getting out of a car. They spoke for a moment, and Matera went into the store. A few minutes later, she ran back to the car, then went back into the store, paid for several items including gift cards, and returned to the car.

Bateman was charged with three counts of identity theft in the second degree for these incidents along with the other two charges. A jury convicted him of all charges except the identity theft count arising out of the convenience store incident. Bateman appeals.

Bateman first argues that admission of recordings of his jailhouse phone calls violated article I, section 7 of the Washington Constitution. He did not object to their admission at trial. Bateman argues admission was error because he had a privacy interest in his phone calls and no warrant was obtained to record them. His arguments fail under State v. Modica, 164 Wn.2d 83, 186 P.3d 1062 (2008), and State v. Archie, 148 Wn. App. 198, 199 P.3d 1005, review denied, 166 Wn.2d 1016 (2009).

Bateman next argues that the crime of identity theft has four alternative means, some of which were not supported by substantial evidence. This argument implicates the right to a unanimous jury verdict provided by article I, section 21 of the Washington State Constitution. State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994).

The crime of identity theft is defined as follows: "No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1). The crime is identity theft in the first degree, a class B felony, if the offender obtains $1,500 or more in value. Otherwise, the crime is identity theft in the second degree, a class C felony. RCW 9.35.020 (2-3).

The to-convict instructions for counts 2 and 3 read: "the defendant knowingly obtained, possessed, or transferred or used a means of identification or financial information."

An alternative means crime is one that provides that the proscribed criminal conduct may be proved in a variety of ways. State v. Peterson, 168 Wn.2d 763, 767, 230 P.3d 588 (2010).

The Supreme Court has articulated four factors that help to determine whether, in a particular statute, the legislature intended to define multiple offenses or a single offense committable in more than one way: (1) the title of the act, (2) whether there is a readily perceivable connection between the various acts set forth, (3) whether the acts are consistent with and not repugnant to each

other; and (4) whether the acts inhere in the same transaction. State v. Arndt, 87 Wn.2d 374, 378-84, 553 P.2d 1328 (1976). In Arndt, the defendant had been convicted of grand larceny for fraudulent receipt of public assistance. The statute criminalized various acts by which a person might obtain public assistance to which he was not entitled, such as making a willfully false statement and willfully failing to reveal a material fact concerning eligibility. Applying the factors, the court concluded that the statute did not define multiple offenses. Rather, it defined a single offense that could be committed by several different means. This conclusion defeated the defendant's argument that the jury had to agree unanimously as to each means of committing the crime that was mentioned in the to-convict instruction. The jurors only had to agree unanimously that the defendant committed grand larceny.

Although both the State and Bateman contend that the Arndt factors support their respective positions, neither argues that the identity theft statute defines more than one crime. If the four verbs in the statute defined four distinct crimes, there would be no basis on which to argue that any of the four crimes could be committed by alternate means. Because the parties agree that RCW 9.35.020 describes a single offense, the Arndt factors are not relevant. The question is whether the single offense of identity theft can be committed by only one means or by several.

Bateman contends that the four different verbs used in the statute—obtain, possess, transfer, and use—define four alternative means of committing the crime of identity theft. Where a single crime can be committed in more than

one way, there must be juror unanimity as to guilt for the single crime charged, but the jurors need not be unanimous as to the means by which the crime was committed so long as substantial evidence supports each alternative means presented. State v. Kitchen, 110 Wn.2d 403, 410, 756 P.2d 105 (1988) (explaining the distinction between an alternative means case and a multiple acts case). If the four verbs in the identity theft statute comprise only a single means of committing identity theft, then the issue of juror unanimity does not arise.

There is no bright line rule by which the courts can determine whether the legislature intended to provide alternate means of committing a particular crime. Peterson, 168 Wn.2d at 769. Each case must be evaluated on its own merits. Peterson, 168 Wn.2d at 769.

Bateman contends the use of four different verbs establishes that the crime is committable in more than one way. He argues there is no substantial evidence proving that he knowingly obtained or transferred the credit card used at the department store or that he knowingly obtained or used the credit card at the drugstore.

A defendant may not simply point to an instruction or statute that is phrased in the disjunctive in order to trigger a substantial evidence review. State v. Smith, 159 Wn.2d 778, 783, 154 P.3d 873 (2007); Peterson, 168 Wn.2d at 770. A definition that states methods of committing a crime in the disjunctive does not require a conclusion that the definition creates alternative means of committing the crime. State v. Laico, 97 Wn. App. 759, 762, 987 P.2d 638 (1999).

Where the word "knowingly" clearly relates to a series of verbs, its placement suggests only one means is intended. State v. Lindsey, 177 Wn. App. 233, 241, 311 P.3d 61 (2013), review denied, ___ P.3d ___ (2014). That is the case here. RCW 9.35.020(1) states that no person "may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person."

Bateman points to the comments to the pattern instruction on identity theft. Practitioners are advised to omit the phrase "obtained, possessed, or transferred" when the defendant is charged only with "use":

> The phrase "obtained, possessed, or transferred" is separately bracketed from the word "used." The separate bracketing is intended to emphasize that, for cases in which the defendant is charged only with "use" of the designated items, jurors should not also be instructed with the other statutory terms.

11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 131.06 note on use at 560 (3d ed. 2008). Bateman contends the comment indicates that "use" is one "means" while possession is another "means." But the comment does not refer to "means," and it does not cite cases. We regard the comment not as a legal analysis but rather as practical advice intended to help practitioners avoid confusing a jury.

Bateman's argument is similar to one the Supreme Court rejected in State v. Owens, 180 Wn.2d 90, 323 P.3d 1030 (2014). The statute addressed in Owens provides that a person who "knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen

property in the first degree." RCW 9A.82.050(1). The defendant argued that the eight different verbs articulated eight alternative means for committing the crime of first degree trafficking in stolen property. He argued that his conviction had to be reversed because the State charged all eight and there was not substantial evidence to support each means charged. Relying on the placement of the word "knowingly" in two different positions in the list of verbs, the court concluded that the statute articulated only two alternative means, not eight. The court also pointed out that the first seven verbs were so closely related they did not really address distinct acts:

> For example, it would be hard to imagine a single act of stealing whereby a person "organizes" the theft but does not "plan" it. Likewise, it would be difficult to imagine a situation whereby a person "directs" the theft but does not "manage" it. Any one act of stealing often involves more than one of these terms. Thus, these terms are merely different ways of committing one act, specifically stealing. Consistent with Peterson, where the various acts of moving without giving proper notice were too similar to constitute distinct alternative means, an individual's conduct under RCW 9A.82.050(1) does not vary significantly between the seven terms listed in the first clause, but does vary significantly between the two clauses. We hold that RCW 9A.82.050(1) describes only two alternative means of trafficking in stolen property.

Owens, 180 Wn.2d at 99, citing Peterson, 168 Wn.2d 763. Because substantial evidence supported each of the two alternative means, the court affirmed the conviction.

The four verbs that describe identify theft are like the seven verbs that describe the first alternative means of trafficking in stolen property. They do not really address distinct acts. The State accurately characterizes them as "stages along a continuum of activity." For example, it would be hard to imagine the

crime of identity theft being committed by a single act of using a credit card that did not also involve obtaining and possessing the card. It does not matter which of the four verbs most accurately describes the way Bateman involved himself with another person's credit card. What matters is that the jury unanimously found he did so knowingly and with the intent to commit a crime.

In a statement of supplemental authority, Bateman calls attention to State v. Leyda, 157 Wn.2d 335, 138 P.3d 610 (2006), and its abrogation in 2008 by legislative amendment to chapter 9.35 RCW. Leyda, a unit of prosecution case, held that the defendant's convictions on four counts of identity theft violated constitutional prohibitions against double jeopardy. The court held it was improper for the State to charge Leyda with four counts of identity theft when he only had a single credit card of a single individual, even though the card was involved in at least four of his transactions. The court said common sense suggested that a victim "has only one identity that can be unlawfully appropriated." Leyda, 157 Wn.2d at 347.

The act now articulates the legislature's intent "to penalize for each unlawful act of improperly obtaining, possessing, using, or transferring means of identification or financial information of an individual person." RCW 9.35.001. The amendment changed the statute to permit what occurred in this case, the charging of Bateman with more than one count of identity theft though each transaction involved the same credit card of the same person.

It is not self-evident how the amendment and the new intent language might bear on Bateman's argument that identity theft is an alternative means

8

crime. Bateman admitted at oral argument that he has not located any authority explaining how a double jeopardy unit of prosecution analysis overlaps, if at all, with an alternative means juror unanimity analysis. We decline the invitation to incorporate the supplemental authority into our analysis. Such "'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" In re Rosier, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986), quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir. 1970).

We conclude Bateman has failed to establish that the crime of identity theft has alternative means.

Bateman filed a pro se statement of additional grounds for review pursuant to RAP 10.10. His statement outlines a number of instances of allegedly deficient performance of counsel and prosecutorial misconduct. He claims there was a speedy trial violation. And he faults the court for refusing his request to appoint new counsel and for allowing Matera to testify in jail clothes. The statement of additional grounds suffers generally from misunderstanding of applicable law. None of the grounds stated by Bateman warrant further review.

The reply brief of appellant prepared by appellant's counsel endorses and advocates one of the claims of ineffective assistance of counsel identified in Bateman's statement of additional grounds. Appellant's counsel also attempted to include the ineffective assistance issue in his oral argument before this court.

Counsel's conduct demonstrates a misunderstanding of the rules of appellate procedure. An appellate case is framed by the brief of appellant, which assigns error and identifies the issues the court is being asked to review. RAP

10.3(a). The brief of respondent answers the brief of appellant. RAP 10.3(b). The reply brief of appellant is limited to a response to the issue in the brief to which the reply brief is directed. RAP 10.3(c).

A pro se statement of additional grounds as allowed by RAP 10.10 is not a supplemental brief of appellant. Indeed, it is not a brief at all. It is an opportunity for an appellant to call the court's attention to matters that the appellant believes were not adequately addressed in the brief filed by appellant's counsel. RAP 10.10(a). The rule provides that the court may, in its discretion, request additional briefing from counsel to address issues raised pro se by the appellant. RAP 10.10(f). The rule does not provide discretion to counsel to supply additional briefing that the court has not requested.

Here, the brief of appellant did not raise ineffective assistance as an issue. Counsel did not obtain permission from the court to file a supplemental assignment of error or a supplemental brief. The court did not request additional briefing from counsel to address the issue of ineffective assistance. Counsel's inclusion of the issue in the reply brief of appellant was improper and violated RAP 10.7. In written and oral advocacy before this court, appellate counsel should stay within the confines of errors and issues identified in compliance with the rules of appellate procedure.

Affirmed.

WE CONCUR:

Becker, J.